UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NICHOLAS ROBLES,

                         Plaintiff,

                                                            **Hon. Hugh B. Scott**

                         v.                                 09CV718

                                                            (CONSENT)

WARDEN S. KHAHAIFA, et al.,                                 **Order**

                         Defendants.


Before the Court is defendants' motion for summary judgment dismissing this action

(Docket No. 37[1]).  Responses to this motion were due by April 3, 2012, and any reply was due by

April 16, 2012 (Docket No. 47).  After denying (Docket No. 53) plaintiff's motions (Docket

No. 47) for appointment of counsel and to stay the defense summary judgment motion (Docket

No. 50), responses were due by May 14, 2012, and replies by May 25, 2012 (id.).  The parties

---

[1]In support of this motion, defendants submitted their Memorandum of Law, Docket No. 38; their Statement of Facts, Docket No. 39; the declarations of defendants sergeant Darin Austin, Docket No. 40; inmate grievance resolution program supervisor Brian Fitts, Docket No. 41; retired Superintendent Sibatu Khuhaifa, Docket No. 42; Dr. Dwight Lewis, Docket No. 43; corrections officer Todd Wilson, Docket No. 44; and a declaration of their counsel, with exhibit (videotape of May 7, 2009), Docket No. 45; the declaration of Dr. Winston Douglas with exhibits, plaintiff's medical record, filed under seal, Docket No. 48; their attorney's reply Declaration, Docket No. 58.
     In opposition, plaintiff submits his motion to stay summary judgment and for appointment of counsel and its supporting papers, Docket Nos. 50, 51, 52; his letter to Chambers, dated Apr. 11, 2012, Docket No. 54; and his "Affidavit of Truth Amendment in Opposition to Respondents Summary Judgment," with enclosed Affidavit of Junior Lorenzo Cepeda and exhibit of a grievance, Docket No. 55; his amendment renewed motion for stay of defense motion, Docket No. 57.

consented to proceed before the undersigned as Magistrate Judge on August 15, 2011 (Docket No. 30).

Plaintiff filed a renewed motion to stay the defense motion (Docket No. 57); that motion is **denied**.

BACKGROUND

Plaintiff, proceeding pro se, commenced this action alleging that defendants were deliberately indifferent to his medical condition while he was incarcerated at the Orleans Correctional Facility ("Orleans") in 2009 (Docket No. 14, Am. Compl.; Docket No. 39, Defs. Statement ¶¶ 1, 3). The Amended Complaint alleges claims against Superintendent S. Khuhaifa, Dr. Winston Douglas and Dr. Dwight Lewis, inmate grievance supervisor Fitts, Sergeant Austin, and corrections officer Wilson (Docket No. 14, Am. Compl.). He claims that Drs. Douglas and Lewis exhibited deliberate indifference to plaintiff's right shoulder from February 2009 to June 2010 by failing to treat his shoulder and depriving plaintiff of pain medication. He alleges that the original injury arose from a prison assault while he was at Fishkill Correctional Facility, but he alleges here only claims arising in this District surrounding the treatment he received (or did not receive) while at Orleans (id. ¶¶ 16-17). Since plaintiff did not receive what he believed to be adequate pain medication, he substituted illegal marijuana to self-medicate his pain and was disciplined for marijuana possession (id. ¶ 20). Plaintiff moved for leave to proceed in forma pauperis (Docket Nos. 2, 5) and leave was granted (Docket No. 7).

*Defense Motion for Summary Judgment*

According to defendants' Statement of Undisputed Facts (Docket No. 39), plaintiff alleges that defendants were deliberately indifferent to the condition of his right shoulder,

2

alleging that Superintendent Khahaifa instituted a policy which forbade prescribing narcotics to inmates (Docket No. 39, Defs. Statement ¶ 3; see also Docket No. 14, Am. Compl. ¶ 21). Superintendent Khahaifa states that, because medical decisions are delegated to medical personnel, he disclaims any influence over that decision making and denies that a no anti-narcotic policy exists at Orleans (Docket No. 39, Defs. Statement ¶ 4; Docket No. 42, Khahaifa Decl. ¶ 6).  Narcotic pain medication is prescribed on a case-by-case basis as needed by an inmate patient (Docket No. 39, Defs. Statement ¶ 5).  Khahaifa received five letters and numerous grievances from plaintiff regarding his medical treatment which he forwarded to appropriate office or, with the grievances, he considered the appeal and affirmed denial of relief, with these appealed grievances then appealed to Department of Corrections and Community Supervision ("DOCCS") Albany central office (id. ¶ 9; Docket No. 42, Khahaifa Decl. 12).

Defendant Fitts was employed as an inmate grievance resolution program supervisor at Orleans (Docket No. 39, Defs. Statement ¶ 11; Docket No. 41, Fitts Decl. ¶ 1).  Plaintiff claims that Fitts circumvented the grievance process (Docket No. 39, Defs. Statement ¶ 12), but Fitts claims that all grievances were filed and processed pursuant to DOCCS directives (id. ¶ 13).

Defendant Austin was a sergeant at Orleans during this time and plaintiff alleges that he mislead and misinformed unnamed DOCCS officials in Albany by incorrectly telling them that he saw plaintiff lift weights (id. ¶¶ 17-18).  Austin denies contacting Albany about plaintiff and he disclaims ever seeing plaintiff exercise (id. ¶¶ 22, 23).

Defendant Wilson is a corrections officer at Orleans (id. ¶ 25) and plaintiff claims that Wilson interfered with plaintiff's medical care by collaborating with nursing staff and Sergeant Austin in misinforming Albany officials about plaintiff's ability to lift weights (id. ¶ 26).  When

3

Wilson was questioned by medical staff about plaintiff, Wilson told them that he saw plaintiff lift weights daily (id. ¶¶ 27-28).  A member of medical staff then went to the gym but missed plaintiff because he finished there (id. ¶ 29).  Wilson never contacted Albany about plaintiff; had such contact been made, it would have been memorialized in a memorandum (id. ¶ 31).

Plaintiff alleges that Dr. Douglas, Facility Health Services Director at Orleans, refused to prescribe narcotics to plaintiff and instead chose to treat plaintiff's shoulder differently (id. ¶ 35). Dr. Douglas was plaintiff's primary physician at Orleans (see Docket No. 43, Dr. Lewis Decl. ¶ 4).  Dr. Douglas explains that plaintiff made repeated demands for Percocet and other narcotics that were not medically necessary and plaintiff was not compliant with medical instructions (Docket No. 39, Defs. Statement ¶ 39; see id. ¶¶ 36-38, 40-41; Docket No. 48, Dr. Douglas Decl. ¶¶ 17, 18, 15, 20).  Knowing plaintiff's history of drug abuse and his medical condition, Dr. Douglas changed plaintiff's medication (Docket No. 39, Defs. Statement ¶ 40; Docket No. 48, Dr. Douglas Decl. ¶ 20).  Plaintiff was prescribed a sling and physical therapy as treatment for his shoulder (Docket No. 39, Defs. Statement ¶ 43), but plaintiff did not regularly wear the sling or attend physical therapy sessions, seeking instead imaging of the shoulder (id. ¶¶ 44, 42).  Plaintiff also lifted weights (id. ¶ 45; Docket No. 48, Dr. Douglas Decl. ¶¶ 12-13), despite being told by medical staff to refrain from lifting weights (Docket No. 48, Dr. Douglas Decl. ¶ 12).  On plaintiff's almost daily sick calls, medical staff noted plaintiff's "bulky well defined deltoids and bicep muscles, which are signs indicative of continued exercise" (id.). Defendants point to plaintiff's failed November 2008 surgery by outside surgeon Dr. Stegamann at Erie County Medical Center as the cause for plaintiff's rotator cuff damage (Docket No. 39, Defs. Statement ¶ 46; Docket No. 48, Dr. Douglas Decl. ¶ 24, Ex. A, at Bates No. 311).

4

Plaintiff charges that Dr. Lewis, a facility physician at Orleans, was deliberately indifferent (Docket No. 39, Defs. Statement ¶¶ 49-50).  Dr. Lewis asserts that plaintiff was given proper medical care for his shoulder while at Orleans, he was prescribed pain and anti-inflammatory medicines, physical therapy, and a sling (id. ¶ 51; Docket No. 43, Dr. Lewis Decl. ¶ 3), as well as monitoring images of his shoulder and examinations by outside consulting physicians (Docket No. 39, Defs. Statement ¶ 52; Docket No. 43, Dr. Lewis Decl. ¶ 3).

Defendants argue that both the subjective and objective elements of a deliberate indifference claim are not met here.  Subjectively, they argue that plaintiff has not proven a culpable state of mind for any of the defendants (Docket No. 38, Defs. Memo. at 8-13). Objectively, defendants contend that plaintiff was scheduled for shoulder surgery in 2007 but was released and that surgery was never performed.  Plaintiff was again incarcerated in 2008 and had two surgeries on his shoulder (Docket No. 48, Dr. Douglas Decl. ¶ 6).  In 2009, plaintiff was deemed not to be a candidate for surgery, and was prescribed anti-inflammatory medication instead.  Plaintiff, however, was not compliant with medical advice.  Plaintiff worked out extensively, with one routine on May 7, 2009, videotaped showing plaintiff lifting weights, punching a heavy bag, and playing basketball, despite medical instruction to avoid such strenuous activity (Docket No. 45, Defs. Atty. Decl. ¶¶ 5-10, Ex. A (videotape)[2]).  Defendants conclude that plaintiff's complaints did not rise to the level of serious medical need to meet the objective prong of the deliberate indifference claim (Docket No. 38, Defs. Memo. at 5-7).

---

[2]Plaintiff reviewed the videotape, Docket No. 45, Defs. Atty. Decl., Ex. A, cover letter Feb. 13, 2012 (with written notation "tape reviewed: 2-16-12" and signed by plaintiff).

Defendants each deny conspiring against plaintiff (Docket No. 39, Defs. Statement ¶¶ 10, 16, 24, 33, 48, 54; Docket No. 38, Defs. Memo. at 19-21) and deny any deliberate indifference on their part to plaintiff's condition (see Docket No. 39, Defs. Statement ¶ 54). They also argue that plaintiff fails to establish the personal involvement of Superintendent Khahaifa, Austin, Fitts, or Wilson in plaintiff's medical care (Docket No. 38, Defs. Memo. at 13-19). Defendants alternately argue that they are entitled to qualified immunity if a constitutional violation is found here (id. at 21-23).

Plaintiff responds that he complains that he continues to suffer pain in that shoulder due to not being prescribed pain medication (Docket No. 54, Pl. letter response dated Apr. 11, 2012, at 1-2), although he has not amended his Complaint to allege continuous liability. He was prescribed Ibuprofen 800 mg., but plaintiff states that he could not tolerate this medicine in his stomach (id. at 1). Plaintiff previously argued that there is conflicting testimony (Docket No. 51, Pl. Memo. in support of motion for appointment of counsel and stay of defense motion ¶¶ 2, 5) but does not identify these conflicts. Plaintiff denies that he alleges any conspiracy among the defendants (Docket No. 52, Pl. Aff. in support of appointment motion ¶ 3).

Plaintiff also complains about an assault that allegedly occurred on April 4, 2012, seeking to have this Court and prison grievance official review videotape of the incident (Docket No. 54, Pl. letter, at 1-2). That incident and others he raises in his papers (some discussed below), however, are beyond the scope of this pending action[3].

---

[3]Plaintiff also sought production of his medical records from January 2012 to present, Docket No. 54, Pl. Letter at 3. Docket No. 48 is plaintiff's medical record during the relevant period for this action, from February 13, 2009, to June 1, 2010, see Docket No. 48, Dr. Douglas Decl. ¶ 4, Ex. A, at first page, cover letter of April 12, 2011; see generally id., Ex. A.

In his "Affidavit of Truth" (Docket No. 55), plaintiff describes the injury to his shoulder that lead to the surgeries and pain he suffers (Docket No. 55, Pl. Aff., FACTS ONE, TWO, FOUR, Ex. B; Docket No. 57, Pl. Amend. ¶¶ 7-8) and complains that physical therapy ended with his transfer to Fishkill Correctional Facility prior to his imprisonment at Orleans (Docket No. 55, Pl. Aff., FACT SIX).  He faults Dr. Douglas for relying upon other medical personnel in plaintiff's medical record rather than his own assessment (id. FACT TEN), in fact plaintiff claims that Dr. Douglas used a purported assessment of plaintiff from Erie County Medical Center in January or February 2011 which claimed that plaintiff was in the Attica Correctional Facility but plaintiff was not confined there at that time (id. FACT NINE).  Plaintiff states that due to "the medical malpractice of Winston Douglas," plaintiff had undergone severe and excruciating pain (id. FACT ELEVEN).  He claims that he was denied proper medical assistance at Orleans (id. FACT SEVEN) and that a Jane Doe, a nurse administrator at Orleans but not named as a defendant here, violated HIPAA[4] by having security personnel investigate plaintiff's medical claims (id. FACT EIGHT).  Plaintiff then alleges that, on April 11, 2012, he was assaulted by prison guards during a cell search (id. FACT 14).

He submits Junior Cepeda's "Affidavit of Truth" about medical staff disregarding plaintiff's complaints on March 28, 2012 (Docket No. 55, Cepeda Aff. of Truth).  Cepeda states that he saw unnamed medical personnel "refuse to listen" to plaintiff on March 28 to his complaints, stating that plaintiff would always "complain about the same right shoulder all the

---

[4]Health Insurance Portability and Accountability Act, Pub. L. No. 104-191, 110 Stat. 1936 (1996).  As recently held by this Court, any violation of medical privacy under HIPAA is limited to enforcement by the Secretary of Health and Human Services, Wright v. Szczur, No. 11CV140, 2012 U.S. Dist. LEXIS 10872, at *15 (W.D.N.Y. Jan. 30, 2012) (Skretny, Ch. J.). Thus, even if plaintiff were deemed to allege such a claim, it would have to be denied.

time and everyday" (id. FACT 3).  Cepeda states that he overhead medical staff talking about

plaintiff's medical condition with security personnel at Orleans (id. FACT 4).  Cepeda also

witnessed plaintiff being assaulted by security personnel on April 11, 2012 (id. FACT 6).

   Because plaintiff was refused pain medication, he claims that he took marijuana and then

plead guilty in a disciplinary proceeding to marijuana use when caught (Docket No. 57, Pl.

Amend. ¶ 9).  He states that he declined what he termed an experimental surgical procedure by

Dr. Stegamann in January of 2011 (id. [first] ¶ 10).  Plaintiff alleges that since his reassignment

to Orleans, defendants has been denied appropriate pain medication (id. [second] ¶ 10; see id.

¶ 11).  Plaintiff's condition worsened when he injured his right knee and was then denied pain

medication (id. ¶ 12).

   In their reply, defendants note that plaintiff made "numerous irrelevant references

(Docket No. 58, Defs. Atty. Reply Decl. ¶¶ 4, 6) and submitted an unsworn witness statement (cf.

Docket No. 55, Cepeda Aff. of Truth) that he saw medical personnel walk from plaintiff on

March 28, 2012 (Docket No. 58, Defs. Atty. Reply Decl. ¶ 5).  Defendants argue that this

statement is too vague and conclusory to create a material issue of fact, it does not identify any

defendant as the medical personnel involved, and is outside the time period (2009-10) for this

action (id.).  They conclude that plaintiff has failed to raise a material issue of fact to preclude

summary judgment (id. ¶ 7).

DISCUSSION

I.      Summary Judgment Standard

   Summary judgment is appropriate only if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits or declarations show that

8

there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ.

P. 56(a), (c)(1) (effective Dec. 2010).  The party seeking summary judgment has the burden to

demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue

of material fact exists, a court must examine the evidence in the light most favorable to, and draw

all inferences in favor of, the non-movant. Ford, supra, 316 F.3d at 354.  "A dispute regarding a

material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party.' " Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d

Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864

(1997).  While the moving party must demonstrate the absence of any genuine factual dispute,

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is

sought, however, "must do more than simply show that there is some metaphysical doubt as to

the material facts. . . . [T]he nonmoving party must come forward with specific facts showing

that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group,

Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d

Cir. 2002).  The opponent to summary judgment may argue that he cannot respond to the motion

where it shows, by affidavit, "that, for specified reasons, it cannot present facts essential to

justify its opposition," Fed. R. Civ. P. 56(d).

      The Local Civil Rules of this Court require that movant and opponent each submit "a

separate, short, and concise" statement of material facts, and if movant fails to submit such a

statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2)

(effective Jan. 1, 2011).  The movant is to submit facts in which there is no genuine issue, id. R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56(a)(2).  Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id.  Each statement of material fact is to contain citations to admissible evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

The pleading of a pro se plaintiff, however, is to be liberally construed, see Haines v. Kerner, 404 U.S. 519 (1972) (per curiam).

> "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'  Specific facts are not necessary; the statement need only '"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'  Bell Atlantic Corp. v. Twombly, [550 U.S. 544, 555], 127 S. Ct. 1955, 1964, (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.  Bell Atlantic Corp., supra, at [555], 127 S. Ct. 1955, 1964, (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n. 1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974))."

Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  In Erickson, the Court held that the Tenth Circuit departed from the liberal pleading standards of Rule 8(a)(2) by dismissing a pro se inmate's claims.

> "The Court of Appeals' departure from the liberal pleading standards set forth by Rule 8(a)(2) is even more pronounced in this particular case because petitioner has been proceeding, from the litigation's outset, without counsel.  A document filed pro se is 'to be liberally construed,' [Estelle v. Gamble, 429 U.S., 97, 106 (1976)], and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,' ibid. (internal

quotation marks omitted).  Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice").

551 U.S. at 94; see Boykin v. KeyCorp, 521 F.3d 202, 213-14 (2d Cir. 2008).  Thus, the pro se plaintiff's complaint has to be construed "more liberally" than one filed by counsel, Boykin, supra, 521 F.3d at 214.

"An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made with personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated," Fed. R. Civ. P. 56(c)(4) (2010) (formerly Rule 56(e)).

II.    Deliberate Indifference Standard

Under the Eighth Amendment, in order to state a claim for inadequate medical treatment, plaintiff must allege that defendants acted with "deliberate indifference to [a] serious medical need," LaGrange v. Ryan, 142 F. Supp. 2d 287, 293 (N.D.N.Y. 2001); see Estelle v. Gamble, 429 U.S. 97, 104 (1976); see also Gregg v. Georgia, 428 U.S. 153, 173 (1976) (the Eighth Amendment prohibits infliction of "cruel and unusual punishments" which includes punishments that "involve the unnecessary and wanton infliction of pain.") (citations omitted); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.  1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995).   "To establish an unconstitutional denial of medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Hathaway, supra, 37 F.3d at 66 (quoting Estelle, supra, 429 U.S. at 104).  Mere negligent treatment or malpractice upon a suspect, however, does not create an Eighth Amendment violation, see Corby v. Conboy, 457 F.2d 251, 254 (2d Cir. 1972).  This claim has two elements, an objective component, that the deprivation

11

must be sufficiently serious; and a subjective component, that the defendant official must act with sufficiently culpable state of mind.  Hathaway, supra, 37 F.3d at 66.  "Sufficiently serious" for the objective component contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain."  Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) (quoted in Hathaway, supra, 37 F.3d at 66).  Plaintiff needs to prove that defendants wantonly intended to cause him to suffer.  Wilson v. Seiter, supra, 501 U.S. at 302.

III.    Application

    A.      Procedural Grounds

Here, plaintiff did not submit his counterstatement of facts providing a point-by-point refutation or adoption of the defense statement of facts.  Instead, plaintiff provides in moving papers an attempt to stay the hearing of this motion and in other documents alleging generally that there were contested issues of fact (Docket Nos. 51, 52) or stating specific facts (contested or not) that he is now asserting in response to the motion (Docket Nos. 55, 57).  He lists various facts in the latter instances without clearly indicating which fact is material to this motion. Despite his pro se status, the fact plaintiff did not state what facts were contested (even if not in a formal counterstatement) and compels this Court to look exclusively at defendants' statement as the conceded facts in this case.  Plaintiff does point to some minor discrepancies in facts (for example, Dr. Douglas relying upon medical findings in 2011 while plaintiff was in another facility, Docket No. 55, Pl. Aff. FACT NINE; but cf. Docket No. 48, Dr. Douglas Decl. ¶ 11, Ex. A Bates No. 277 (consultation with Dr. Stegamann occurred in 2010)) but these are not material to oppose the defense motion.

First, plaintiff submits his own and a witness's "Affidavit of Truth" (Docket No. 55), but both are unsworn and not witnessed statements, cf. 10B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2738, at 362-63 (Civil 3d ed. 1998) (affidavits submitted for or opposing a summary judgment motion need not be notarized, they may be made under penalty of perjury, but unsworn statements will be rejected).  Plaintiff certified and swore "to my unlimited commercial liability that the testimony I give before this court is, to the best of knowledge and understanding, true, correct, and complete, not misleading, the truth, the whole truth, and nothing but the truth, so help me God," and concluded that he declared "under the Laws of the Constitution of the United States of America that the above stated facts are true, correct, and complete to the best of my knowledge and belief.  So help me God" (Docket No. 55, Pl. Aff. of Truth at pages 1 of 3 and 3 of 3).  Witness Cepeda, a "sovereign American," submits a similar "Affidavit of Truth," declaring that "the facts stated/listed below are true, correct, and complete to the best of my understanding and belief so help me God," concluding that he "declares under the laws of the constitution of the United States of America (1787) as amended (1791) by the Bill of Rights that the above is true, correct, and complete, to the best of my belief and knowledge.  And does declare that notary assistance was not possible upon time and date of submitting this Affidavit of Truth.  So help me God" (id., Cepeda Aff. of Truth).  The handwriting for both Affidavits is similar as is the verbiage.  Neither document is a declaration stating expressly that they were made under penalty of perjury, cf. 28 U.S.C. § 1746.

Nevertheless, given that plaintiff is an inmate proceeding pro se and, as indicated by Cepeda, may have lacked notary assistance with these documents, this Court will consider them as part of the opposition to summary judgment.  But even considering these papers, Cepeda's

13

Affidavit of Truth is not admissible for the information it contains since it discusses events in 2012 that are beyond the scope of this action as currently plead, see 10B Wright, Miller & Kane, supra, § 2738, at 330, 341 (court excludes summary judgment affidavit if its irrelevance is clear). As currently plead, this case involves defendants' deficient treatment of plaintiff in 2009-10; plaintiff has not sought to amend this Complaint again to allege continuing harm.  Further, Cepeda's statement accuses an unnamed medical staffer for ignoring plaintiff's pleas for treatment on his shoulder without any connection of that unnamed employee to the named defendants in this case.

Next, this Court addresses the substance of defense arguments.

B.      Deliberate Indifference

As for the objective element of a deliberate indifference Eighth Amendment claim, at worst plaintiff alleges medical malpractice (if that) in not prescribing the medication he desired. He sought narcotic medication while the facility medical staff prescribed Ibuprofen.  That allegation is not sufficient to state a constitutional deprivation.   Mere negligent treatment or malpractice upon a prisoner does not create an Eighth Amendment violation.  Estelle, supra, 429 U.S. at 106; Corby, supra, 457 F.2d at 254.  Plaintiff also exercised his shoulder, engaging in weight lifting and hitting a heavy bag, stressful and strenuous activities on an injured rotator cuff. Defendants' motion for summary judgment on this ground is **granted**.

As for subjective element, plaintiff has not suggested that defendants wantonly wished to cause him to suffer or lay out that defendants had the sufficiently culpable state of mind to establish this element.  On this ground, defendants' motion is also **granted**.

C.      Personal Involvement

As alternative ground, defendants motion is **granted** as to certain supervisory defendants because plaintiff fails to establish the personal involvement of supervisory officials retired Superintendent Khahaifa, Austin, Fitts, or Wilson in the denial of the sought medical care.  The medical decisions were made by medical staff, in particular defendant Doctors Douglas and Lewis.  The administrators named here merely considered grievances raised by plaintiff regarding this care.

To state a § 1983 claim, plaintiff must allege the manner in which defendant was personally involved in depriving plaintiff of his rights, see Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989).  There are several ways to allege personal involvement:  plaintiff could claim that defendant had direct participation in the event; plaintiff could claim that defendant failed to remedy the violation after it was noticed; defendant created the policy which lead to the violation or allowed the policy to continue; defendant was grossly negligent in managing subordinates which caused the violation to occur; or defendant exhibited gross negligence or deliberate indifference to plaintiff's rights by failing to act on information indicating that unconstitutional acts were taking place,  Wright, supra, 21 F.3d at 501.  An allegation of personal involvement is a prerequisite for damages under a § 1983 claim in this Circuit, e.g., Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001).

Plaintiff here has not alleged any of these bases for personal involvement of the supervisory defendants.  Plaintiff merely claims that they failed to intervene or grant his grievance regarding the quality of medical care he received or that the superintendent had a no narcotics policy for the inmates.  He does not refute defendants' contention that the supervisory

defendants had no role in the medical decision making for plaintiff's treatment or Khahaifa's

denial of having a policy regarding prescribing narcotics to inmates.  Defendants' motion for

summary judgment on this ground is **granted**.

      D.     Qualified Immunity

When confronted by a claim of qualified immunity, one of the first questions for the

Court to resolve is do the facts, taken in the light most favorable to the party asserting the injury,

show the official's conduct violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194,

201 (2001).  Under Saucier, this Court first considers the constitutional question, then considers

the qualified immunity question, id.  But the Supreme Court, in Pearson v. Callahan, 555 U.S.

223, 236 (2009), overruled Saucier in mandating the order in which trial courts are to consider

qualified immunity claims.  In Pearson, the Court recognized that district and circuit courts had

the discretion to determine the order of the Saucier steps they would consider first (either the

substance of the constitutional claim or the immunity claim), 555 U.S. at 232.

Government officials performing discretionary functions generally are shielded by

qualified immunity from liability in their individual capacities, see Frank v. Reilin, 1 F.3d 1317,

1327 (2d Cir. 1993), "insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald,

457 U.S. 800, 818 (1982).  "If it was objectively reasonable for the defendant to believe that his

act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled

to qualified immunity." Anderson v. Creighton, 483 U.S. 635, 641 (1987); Lowth v. Town of

Cheektowaga, 82 F.3d 563, 568-69 (2d Cir. 1996).

Given that no constitutional violation was found, this Court **need not address**

defendants' alternative contention that they deserve qualified immunity for their actions.

IV.     Post Script--2012 Allegations

During the pendency of this action, plaintiff has been transferred, first from Orleans to

Attica Correctional Facility then to Groveland Correctional Facility and later back to Orleans.

Plaintiff has written two letters to this Court and to the grievance officials complaining about

conditions following his last transfer to Orleans (letter of plaintiff to Chambers, Apr. 30, 2012;

letter of plaintiff to Chambers, Apr. 30, 2012).  In these letters (and in other papers he submitted

in response to defendants' motion, Docket No. 54; <u>see also</u> Docket No. 57), plaintiff claims that

he was harassed and beaten by prison guards when he refused to lift his arms for a frisk due to his

shoulder injuries.  He also alleges that medical staff at Orleans refused to treat him in 2012.  In

his responding papers, he also discusses an April 2012 incident that he seeks the Court to

investigate (Docket No. 54; <u>see also</u> Docket No. 57).

Since these letters and papers allege incidents that occurred in February 23, 2012, and

April of that year, well after the incidents alleged in this pending action and unrelated to those in

this action, this Court **declines** plaintiff's implied request to amend the Complaint to add these

new allegations.  Since plaintiff also sent these letters to the grievance authorities, any potential

claims may not have been administratively exhausted.

CONCLUSION

For the reasons stated above, defendants' motion for summary judgment (Docket No. 37)

is **granted**.  Plaintiff's renewed motion to stay consideration of defendants' motion (Docket

17

No. 57) is **denied** and plaintiff's attempted motion for leave to amend the Complaint to assert claims arising from the April 2012 incident is also **denied**.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied.  Coppedge v. United States, 369 U.S. 438 (1962).  Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

The Clerk of Court is instructed to close this case.

So Ordered.

_/s/ Hugh B. Scott_
Honorable Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
       May 31, 2012